Medina, Your Honor. Okay. You may proceed, Mr Thompson. First, I'd like to thank the court for allowing me to appear by zoom, and I also want the court to know that I'm sitting down because of my medical situation, not because of any other reason. It's just easier than trying to stand and then sit down at the same time, so thank you. I'd like to talk about two issues today, and the first is the conspiracy count, count one, the missing evidence in the case, and the second is the absence of a limiting instruction as to Mr. Gutierrez's testimony concerning Mr. Martinez Medina being a drug dealer. So, with respect, and I'd also like to reserve five minutes of my time for rebuttal. With that in mind, then, with respect to count one, there's evidence is missing of an actual agreement that was entered into by the parties, joined during the agreement by Mr. Martinez Medina, and a plan to distribute to others. For purposes of this argument, I will concede that count two, the distribution itself of the drugs to the women in the Kia was fentanyl, for purposes of the argument. Mr. Martinez Medina met a woman who was in a Kia, driving a Kia, along with another woman, and during the course of a couple of meetings that day, he handed her a black bag with unknown contents, because at that point in time, no one knew what was in that black bag. And at most, what it showed was, is that he delivered fentanyl to the woman, or the women in the Kia. But that is not a conspiracy. It's a sale, it's a distribution, if you will, but it's not a conspiracy to go further. There was no evidence of any agreement with the women, or that anyone would distribute fentanyl to others. There's no connection between Mr. Martinez Medina and the Lincoln, or its occupants, and where another, or perhaps same, unknown black bag was discovered and determined to contain fentanyl pills at that point. There may have been two sales, or two distributions, one from Mr. Martinez Medina to the women in the Kia, and then another one from the women in the Kia to the occupants of the black Lincoln, but there is no evidence of the fact that Mr. Martinez was connected to that distribution. The government didn't present any evidence of a conversation between Mr. Martinez Medina and the women that he met in the parking lot, or between Mr. Martinez and anybody else that could establish that agreement, or that joined her in the agreement. The evidence was simply a distribution to the but not evidence of the conspiracy itself. There was no connection with Mr. Martinez and the Lincoln itself. When Mr. Martinez and the women finally met up at the restaurant, Mr. Martinez went in by himself. The women came in after him. Mr. Martinez left before them, and then the women left after that. Isn't that circumstantial evidence from which you could infer an agreement to sell the fentanyl? I don't think that there's enough circumstantial evidence of that, because there's no, the persons in the black Lincoln were never interviewed, or talked to, or their testimony, what was found with them was never introduced into this case, and there was nothing from the women about what they agreed. Yes, they both went in the restaurant. Yes, he handed her a black plastic bag, but whether that's the same black plastic bag is a different question. But they gave it to someone in a Lincoln SUV, which we assume is another transaction, or infer, is the better word, and that black bag was found to contain fentanyl, right? That's correct. Okay, and so what are we missing? You're missing evidence of the agreement that the fentanyl that was given to the women by Mr. Martinez was intended to be distributed to others. Whether the women decided that they wanted to sell it or distribute it to others is separate from whether Mr. Martinez agreed that that would take place. We have a transaction on behalf of him and the women, and then there is a separate transaction from the women to the black occupants in the black Lincoln. But there's no evidence of Mr. Martinez Medina being connected to that second distribution. Can't we infer an agreement to distribute just from the sheer number of pills that were obtained? Yes, the buyer-seller rule generally talks about the sales being of personal amounts or smaller amounts. And I think that it's possible that one could say that that number of drugs could be later sold or was sold, but there's no evidence of that agreement itself. Counsel, what about the fact that this all happened in short order? This is not, he didn't give these pills to the women in the Kia and then four days later they then handed them over to someone else. This all kind of happened in a short period of time. Can the jury not look at that as circumstantial evidence of the fact that maybe he was involved in the whole thing? I think they can, but there has to be evidence of the agreement, and that's what's missing in this case. Because there's no conversations between any of the individuals and there's no connection. We don't know that the women who were in the restaurant and stayed in the restaurant didn't make a phone call to the folks in the Lincoln and asked them to meet up after whatever transaction had taken place in the parking lot earlier between Mr. Medina and the women in the Kia. We don't know. Do you know how much time passed during that period from when he gave the women in the Kia the drugs to when they gave the drugs to the person in the Lincoln? I don't know the exact time, but it was a short period of time. I mean, the officers testified as to the surveillance. I think the one parking lot, the first parking lot meet up, the second parking lot meet up occurred like five minutes after the first parking lot meet up, and then they both went to the restaurant in short time. I don't recall there being any actual testimony as to the amount of time, but it was all within a relatively short period. Why would Martinez even be in the parking lot during that second transaction if there was no conspiracy among them? Well, he left the restaurant and left. The transaction with the women in the Kia occurred after he had left the restaurant and left the parking lot. So he wasn't there for that transaction. And we also have evidence of the fact that law enforcement had a tip that the women were dealing in fentanyl or connected to fentanyl in some fashion, and that they had just crossed the border between Mexico and the United States. So they may very well have had a situation set up with the individuals in the Black Lincoln to distribute drugs with Mr. Martinez having no knowledge of that whatsoever. So I think while there is the evidence is there, what is missing is the actual evidence of an agreement, the jointer in the agreement, and the evidence of a plan that, yes, we're going to distribute it. Had they had a conversation in which it had been recorded or something in which there had been an agreement, yes, I'll give you these pills, and yes, you'll distribute them to others, then yes, you have enough for conspiracy. You have, I think, enough evidence, again, for the purposes of this argument, you have enough evidence for the sale or the distribution of the fentanyl. It's just the conspiracy part that is missing. So I just want to briefly touch on the instructional issue. Here, the court had been very good about setting up guardrails and making sure that there was not going to be any other crimes evidence that was introduced without limiting instruction. And the roadmap was pretty much set. The prosecution agreed that if there was anything that came up like that, an instruction should be given to the jury. But at the first kind of calling of Mr. Gutierrez up to the stand and asking him the questions, the prosecution asked him, did you give officers information about people you knew who were dealing drugs? To which he responded, yes. Prosecution then asked, did you give them Mr. Martinez's name? Yes. Did you tell them where he lived? Yes. And that's when the instruction should have been given. Because at that point in time, not only did they introduce another act, they introduced as many overt acts as the jury could envision a drug dealer would have done by selling drugs in the past. And there was no burden on the defense lawyer to ask for that instruction at that time? At that time, he did not. But at the earlier time, when he made the motion to exclude the evidence, and there was the discussion about what would be introduced and how it would be introduced, and the court setting up guardrails, as the court called it. At that point in time, the court said, I will give an instruction and the prosecution agreed that it should be given. Defense counsel, I don't believe, was under a duty to then later say at that particular time, now, your honor, you should give the instruction. The court was already in the process of being aware of that and should have at that point in time given the instruction. Counsel, what's the standard of review then, given that defense counsel didn't say anything? What is the standard of review that we need to apply as to this situation? Had defense counsel not brought the motion earlier, had the court not said that an instruction should be given, then it would be plain error because there was no objection made. But because of the fact that counsel brought the motion earlier to exclude the evidence, and because there was an agreement, even by the government as well, that an instruction should be given, I think it's I don't think it's, at that point, goes out of defendant's silence, so to speak, and goes, returns back to the court for not following through on what it said it would do. So the, in your mind, the defense counsel had no obligation to state on the record that it objected or that it, to remind the court, hey, we were going to do a limiting instruction here? Not, because he had made the motion and there had been the agreement that an instruction had been given, his not asking for it at that time doesn't change the burden to a plain error, or the review standard is plain error. It's then court error, whether the court should have given it. Counsel, did you want to reserve time? Whatever time I have left, I'd like to reserve. Okay, thank you. Thank you. All right. Ms. Rabbani? Good morning, your honors. May it please the court, Melissa Rabbani for the United States. I'd like to start where counsel left off with this limiting instruction, and I have essentially two points. The first is that, as we pointed out in our answering brief, this decision, or failure to give a limiting instruction, is not reversible, because the defendant didn't ask for it. He could have asked for it at the time the testimony was given. He could have asked for it at the close of Mr. Gutierrez's testimony, or he could have asked for it at the end of the case when the judge was preparing to give jury instructions before the jury went into deliberations. Counsel's only response to this is to point to this earlier discussion of limiting instructions before trial started. And I want to look, defense counsel or appellant's counsel did quote that in their brief. And when the court said, when the court brought up limiting instructions, the court said, getting into kind of testimony that's pure 404B, we would have a different discussion. And then he says, I think that in that event, it would be important to instruct the jury, you know, on the limitations applicable to this testimony. And then he said, as we get closer to trial, we'll just have another discussion about the scope of the testimony. And the government said, yes, your honor, if 404B evidence does come in, there should be a limiting instruction. But when the court kind of revisited this issue, I think on the first day of trial, the court's decision was, you know what, we're not going to let in any 404B testimony. We're going to stick to what's inextricably intertwined with the charged conduct here. And the prosecutor, who was me, asked a lot of clarifying questions as to what the scope of inextricably intertwined versus 404B would be. And the court was very clear, no, it would be 404B evidence, for example, for Mr. Gutierrez to testify that he had known the defendant for some time, that they had dealt drugs together for some time, that he had seen drugs in Mr. Martinez's home. And that all stayed out. And everything that the district court identified as testimony that would fall under 404B and thus necessitate a limiting instruction did stay out. So the only kind of testimony of Mr. Gutierrez is that counsel points to is this questioning, you know, did you give the names of drug dealers to the DEA? Yes. And then it's a separate question. Did you give the name of Mr. Martinez to the DEA? That's not 404B testimony. It doesn't get into their prior history. I do understand. I'm not trying to be clever, and I wasn't before. I do understand that there is an implication there, right? Because it's right after. But that implication is part and parcel of the case. The story of the case is that the DEA is sitting outside Mr. Martinez's house. The DEA doesn't just sit outside random citizens' houses. The other part of the story in the methamphetamine count is that the DEA asked Mr. Gutierrez, can you call up this guy, Martinez, and set up a methamphetamine sale? That's baked into the whole story of this case, that the DEA was investigating and looking at Mr. Martinez and obviously had some information from somewhere that he was involved in dealing drugs. But Mr. Gutierrez's testimony did not go into that 404B area. He never said, yeah, I know he's a drug dealer. I saw drugs at his house. We dealt drugs together. So you're arguing that not only was there no request for instruction, but any need for an instruction was never triggered by this particular testimony? That's correct, Your Honor. And I believe that's why defense counsel didn't ask for it, because the district court put up very, very clear guardrails, which was helpful. And the government stayed within those guardrails. We never got into those areas that the district court indicated would need a limiting instruction. And so on both counts, it's not reversible because he didn't ask for it. Even if we had gone outside of the guardrails, it was incumbent on defense counsel to raise that issue at some point, because whatever the district court had said before about limiting instructions wasn't plainly applicable to this testimony. Even if defense counsel really believed it was 404B, it's not what the district court had previously said it would give a limiting instruction for. So I do believe it was incumbent on defense counsel to ask for that. And because he didn't, it's not reversible. And then, you know... Counsel, what's your position then on the standard of review? Plain error, Your Honor. And in case that gives anyone or defense counsel any heartburn, my secondary argument is just that it wasn't other acts evidence. There was no limiting instruction necessary, because all of the testimony Mr. Gutierrez gave was inextricably intertwined with the charged conduct in this case. And unless the court has more questions about the limiting instruction, I want to address the conspiracy argument. I understand that Appellant is making kind of this buyer-seller argument, right? And so... Well, he's saying that there's no evidence of an agreement of conspiracy. Correct, Your Honor. And I think for his theory to kind of make sense, it has to be possible that Mr. Martinez didn't agree with anybody else, the women or anyone else, for that fentanyl to be distributed further. So for that to make sense, the idea is he only agreed with these women to hand them the fentanyl, and there was no agreement or understanding or plan for that fentanyl to be distributed further. And defense counsel is correct. We don't have a conversation between Mr. Martinez and anyone else, the two women or anyone else saying, yeah, obviously this is going to be distributed to these people. We don't have that. To Your Honor's point, Mr. Martinez actually was not at that second parking lot transaction. So he didn't see it. He didn't follow them there. We don't know. It's not clear whether he knew that the two women were going to go to that parking lot that day or when or how or to whom they were going to distribute it. But we don't need that level of evidence. It's well established in the case law that often these conspiracies are proved by circumstantial evidence. And so here I think there are two really important points that Your Honor's questions already kind of hinted at. One is just the sheer quantity. I can't remember offhand if it's 20,000 or 30,000 fentanyl pills, but it's somewhere in that ballpark. It's nowhere near a personal use amount of fentanyl. It's absolutely not conceivable or plausible that the plan was for those two women to keep those pills and not either sell them or give them to anyone else. That's a lot of fentanyl. More than two people could use in their entire lifetime. But it sounds like the defense is arguing that while there may have been a conspiracy between the women and the folks in the Lincoln, but there's not any. How do we connect Martinez to that transaction? So I do think, you know, there's no connection necessarily, that's true, between Mr. Martinez and those two guys in the Lincoln. It's possible. He had no idea who the women were going to meet up with. But all that's necessary to sustain the conspiracy conviction is sufficient evidence that Mr. Martinez agreed with someone. It doesn't have to be the two men in the Lincoln. It doesn't even necessarily have to be the two women that these pills were going to be distributed to other people. What is the circumstantial evidence of that? I think there are two pieces. One, again, is the quantity of the drugs. So obviously no one is just buying 20 or 30,000 fentanyl pills for themselves. That's a distribution quantity. It was packaged in such a way, I guess, to avoid detection. It was stuffed inside of a women's lingerie. And the second is that there's no testimony in the record. Special Agent Clay just didn't testify that he saw any money exchange hands. He testified as to exactly what he saw, and he saw Mr. Martinez hand that bag to the two women, drive away. So the circumstantial evidence makes pretty plain that this is not an isolated, I'm just going to sell you guys or give you guys some drugs. This is part of a distribution. It is absolutely not plausible in any universe that a 20,000 or 30,000 fentanyl pill bag is going to be an isolated one-person transaction. Mr. Martinez obviously had to understand that those women were going to distribute or sell. It doesn't matter. Give those pills to someone besides themselves. There's also evidence in the record that Mr. Gutierrez testified that Mr. Martinez, before this went down, told him that he had some thousands of fentanyl pills to get rid of. And so based on Mr. Gutierrez's testimony, that's additional circumstantial evidence that Mr. Martinez entered into some agreement with someone to have those pills distributed beyond those two women. Why is that second piece not just part of a possession with intent to distribute count? It's a good question, right? There is the distribution count. He's charged with distribution. And counsel, for purposes of this argument I understand only, is saying there is sufficient evidence that he's distributed it. Why charge the conspiracy piece? It wasn't necessary. It doesn't actually have any impact on his sentencing or exposure. But because it is so plain that there must have been some conspiracy at some point, there's enough for that charge. But it's the same conduct that underlies the distribution charge and the same sentencing exposure. And unless there are other questions from the court on those issues, I do want to touch briefly on the motion for disclosure of the CI's identity because counsel didn't address that, but I do think it's important. I just, the burden, I just want to remind the court that the burden at the district court was on the defendant to show some kind of connection between whatever the CI's identity or his testimony would do and something that's relevant and helpful to the defense or essential to a fair trial. And plainly, the defendant failed to meet that burden. So he was asked repeatedly by the district court, what would this do? What would this person's testimony do? What could he say that could possibly help you? And the defendant never articulated anything. I do think it's possible that in another world, a defendant in that situation could have articulated some kind of link, right? So if the defendant, for example, had articulated a duress argument and said, well, only that guy can testify that my hands were shaking and I whispered to him that I was only doing this because someone had threatened my family, that might have been a link. But that's not something the defense in this case articulated and that I'm sure was a strategic decision because if he had, then Mr. Gutierrez's testimony obviously could have come in about their history of dealing together. But the defendant below just never articulated any link between what the identity or what the testimony could have been and how that could have helped the defense. And so given the government's interest in protecting this CI and the other factors that the court correctly considered, the defendant just failed to meet his burden. And unless there are additional questions from the court, government will submit. Thank you. Thank you, counsel. Mr. Thompson. Yes, Your Honor. Just briefly, if there's no basis or it wasn't necessary to charge the conspiracy count, then all it did was inflame the jury about an additional count that was not needed. And it does have an effect, whether it has an effect with the sentencing in this case, it could very well have an effect on any sentencing, any future matter or any other collateral consequences. And so I think it's important that that be noted that this is in fact something that should not have been handled and there's not evidence to support it. So move forward from that. And the other thing is, is under the government's theory, anybody that sold an ounce of marijuana to somebody else could also be charged with conspiracy. Because for the most part, people know that they share marijuana with others. And that's a distribution. So you would have a conspiracy count with every drug sale that was ever made along those lines if you followed that theory. And I just don't think that that's right. The evidence is missing here. Turning to the limiting instruction, 404B evidence did come in. The prosecutor asked the question about whether he gave his name as a drug dealer. He said yes. The prosecution was very good about asking clarifying questions from the court as to whether the government could produce this evidence and the court would respond. The government should have asked that question of the court at this time. Excuse me, counsel. You're texting on your phone in court. We don't even permit phones to be on in court. Thank you. All right. Sorry for interrupting. It's okay. The prosecutor should have asked the court whether or not she could ask the question of whether or not Mr. Martinez's name was given to the law enforcement at the time that she asked about people dealing drugs. And failing to do that allowed for the court to get to the point in time where that evidence was introduced. And that's when that evidence, the limiting instruction should have been given. The government argues that it wasn't plain that the court's specific instruction had been violated. And if that's correct, if there's some kind of dispute about that, or if defense counsel suspected that maybe the judge doesn't think it's gone far enough to trigger the need of a limiting instruction, doesn't that make it even more incumbent upon defense counsel to ask for the limiting instruction at that time? Well, but I think that if the prosecution knew it was going to ask that question, since the prosecution asked the court various questions about what it could ask, the prosecution should have said at that time, well, I'm going to ask, did you give officers information about drug dealers? And did you give them Mr. Martinez's name? To which the court would have at that point in time said, that's 404B evidence. No, that can't come in. And it didn't. So I'm not, I am not saying sandbagged. I'm not saying that at all. But it was a duty of the prosecution to ask that question when this whole discussion was going on. And defense counsel objected to any 404B type evidence. That certainly qualifies it as it is. And unfortunately, it's the kind of evidence that allows the jury to gather not just one additional act of 404B, but as many as they could possibly envision with respect to how many drug deals he had been involved in. Counsel, I know you're way over time, but I would like you to address briefly the CI, the confidential informant issue that you brought up. Well, at the time that the motion was made for the disclosure, there was only a few pages of discovery by the counsel had in possession. And no one knew that Gutierrez was at the sale. No one knew that. So there wasn't any more that could be articulated than that. That didn't become known to anybody until right shortly before the trial, maybe even like the first day of trial or before that. So at that point in time, all counsel could say was, is and he asked to call CI as a witness. He wanted to call him as a witness to describe that transaction and what was said or not. The only other person that could do that would be Mr. Martinez Medina, who obviously doesn't have to testify. So I think at that point in time, he provided as much as he could. And he said that he would call him to ask what that conversation was between the two of them. Okay. All right. Are there any more questions? Okay. Thank you very much, counsel. U.S. versus Martinez will be submitted and we'll take up U.S. versus Roan. Thank you.
judges: WARDLAW, ALBA, Brown